Good afternoon, Your Honors. May it please the Court, David Carlin on behalf of the City of San Diego. With me at council table is Ryan Nelson on behalf of the United States and Robert Mews for the San Diegans for the Mount Soledad National War Memorial. The Court has granted the City 20 minutes and the San Diego Group 10 minutes, in that the City has also deeded some of its time to the United States to address the intervening action of the Federal Government in acquiring the property from the City and its effect on this litigation. And with any remaining time, I will address the merits of the City's claim that the District Court abused its discretion in issuing the May 3rd order. So with that said, I turn to Mr. Nelson on behalf of the United States. MR. NELSON Good afternoon. May it please the Court, my name is Ryan Nelson. I represent the United States of America as amicus curiae. The United States has an interest in preserving THE COURT United States owns the property. MR. NELSON It owns the property right now, Your Honor. THE COURT Okay. And we're dealing with a suit involving the California Constitution. MR. NELSON That's correct. This case is moot, Your Honor. And August 14th, when the President of the United States signed the Mount Soledad Veterans Memorial Preservation Act, this case became moot. The City no longer had any legal title. There's no effective relief that this Court could grant to the City. And it's clear that under Article 3, this is a jurisdictional question, and this case has to be dismissed, and the underlying permanent injunction must be vacated. THE COURT Okay. That's the 800-pound gorilla. And I think as much fun as it is thinking about the underlying issues, there's really no way around the question of, well, what do we do now? And what I'd like to hear from you and from everybody when it's their turn to speak is, practically speaking, what do we do, knowing that there is a challenge pending to the Federal Government's ownership of the property, so that it is conceivable that at some date in the future, the City winds up holding the property again. So what do we do with this case in the meantime? You suggest it should be dismissed completely. I suspect we're going to hear from somebody else that it shouldn't be dismissed completely, and I'd like for you to address why we should go one way and not the other in dealing with this practical problem. MR. CLIFTON Absolutely, Judge Clifton. It's clear under the United States Supreme Court precedent that this case must be dismissed. Article 3 standing has to exist at every single point along the way in the case. As of August 14th, there is and was no live controversy. Therefore, under Article 3, this Court has no jurisdiction to do anything except dismiss the case as moot. And what that effectively means, you know, there's no exception to that in this case. The United States made this case moot. The City didn't do it. There's no voluntary act on any of the defendants. And in a situation like that, the fact that this case may come back or this case can never come back. It's over. Plaintiff has suggested, well, I've sued the United States, and therefore the City may regain ownership. A couple of responses to that. First of all, that's entirely speculative. There's no indication contrary to his claim that clearly he's going to win. In 230 years of United States history, no legislative taking has ever been overturned. He faces an insurmountable task. The Supreme Court has on a number of occasions upheld the power of the United States for legislative taking, and it did so in the Gettysburg case, very much on point, where the United States took memorial-related property. So, number one, it's speculative whether this case will ever come back and the City would ever own it. Number two, it doesn't really matter, because as of today and as of August 14th, the case was moot. So if the plaintiff were able to prevail in a subsequent claim, he would have to file a new lawsuit against the City for its resurrected, if you will, ownership in the land. What would happen in that new lawsuit? Could it build on the carcass of this one, or do you really start from square one? I do think you start from square one, Judge Clifton. The underlying permanent – You're obviously aware that there's a certain inefficiency in the system. If after a good number of years you go back and pretend, oops, never mind, and go back and start from square one. Totally understood. The United States Supreme Court understands the inefficiency as well. They are sympathetic to that inefficiency. But if Article III means what it says, then this Court is bound by that. And what that means is that this Court lacks jurisdiction. And under Munsing Ware, from the United States Supreme Court – And the Justice Department likes inefficiency. I wouldn't go so far to say that, Your Honor. I mean, you know, you make a case on that. It's all right. It's the Full Employment Act. What can I say? What we believe is that the President's Act should – Judge Gould is just trying to say something. Oh, sorry, Your Honor. Counsel, I have a question for you. Is there any significance to the language used by Justice Kennedy in giving a stay? I think he said it may become moot if this passes. Does that mean – does the may mean I'm not sure what the law is, or does it mean I'm not sure whether it will pass? So, in other words, at least has that one justice indicated a view on mootness? Two responses. First of all, Justice Kennedy specifically was referring to Proposition A in saying that if Proposition A were upheld on appeal, the case may become moot. I would argue that Justice Kennedy was doing exactly what a good Article III court should do, and that is not issuing an advisory opinion. There was no live case or controversy at that point, and, therefore, he wasn't making any determination. I don't think there was any hesitancy. There's really no question here that the case is moot. There may be some question as to what this Court should do, but even that, the United States would argue, is very clear. The permanent injunction has to be vacated, and if by some strange act the city somehow gets control of it back – and remember, Proposition A is still on appeal. It may well be that the United States has belt and suspenders protection here. We may have it through legislative taking, and it may well be that the State Court of Appeals overturns the Superior Court's decision on Proposition A, and the United States would gain the property either way. So there's no clear way to suggest that the speculative action that the city would retain the property is going to occur. And how do you respond to the argument that because of potential inefficiencies, we should vacate the injunction, but instead of dismissing, stay the case pending the outcome of this related litigation? I take it your response is we can't do that because we have no power to issue a stay? You're correct, Your Honor. The State Court is a different situation. They actually would have the power or authority to stay the case, and it's unclear exactly what the State Court of Appeals is going to do with their case. But for a Federal court, we're bound by Article III, which does mean that this case does have to be dismissed. Do you have authority that speaks specifically to that? I understand we can't take action, but is there anything that prohibits us from just putting it on the shelf to see if, in fact, the United States is the owner of the property in the long run? I believe the Munsingwear case does speak to that. We dealt with a similar situation in the Tenth Circuit, where the roadless rule that the Clinton administration passed was challenged. And while it was on appeal, it was struck down in the Federal District Court. While it was on appeal to the Tenth Circuit, the Bush administration instituted a new rule and said that that mooted the case. The State of Wyoming went into the Tenth Circuit and said, wait, wait, wait, that's already been challenged. It may well be that the Bush administration rule is going to be held unconstitutional. Why don't you just hold this? Let's figure that all out. And the Tenth Circuit said, no, under Article III, we do have the responsibility to dismiss it. Sure enough, the Bush administration rule was held unconstitutional. And now there's a big debate on, you know, whether they can go back and try to resurrect that case or not. Those are very interesting academic questions for another day. But for purposes of this Court, on this day, it lacks jurisdiction and has to dismiss that case. And the permanent injunction, therefore, can't issue. Well, as I hear you say it then, the balance we're facing is a practical problem in that, on the one hand, you have what you've identified as the Article III requirement, case or controversy, requires dismissal. Even though it will require the dismissal of a case that's been through the court system for a good long time and a new suit in the event that the city regains ownership of the property. You say it really can't be built on the carcass. This case can't be revived. You start at square one. The practical unattractiveness of that is difficult to escape. Is there anything we have here other than, well, you've got this conception of Article III on one side. It means we've walked the plank on this side, and that's just how it is. Anything more cheerful I can offer? I have full faith in plaintiff's counsel that should this revert back to the city in any way, shape, or form, he will advance and try and resurrect the carcass that he has worked so hard to create over the last 17 years. And it is true that there's been decisions that have been issued. Now, we're not a party to this case, the United States, but we would argue, and Justice Kennedy pointed out, it's unclear what worth the current carcass really is. In 2004, the United States declared this as a national war memorial, and Justice Kennedy stayed the district court's injunction in part because he said no one's really considered, no court has considered what effect that would really have. So there is a good argument that the prior injunction that was issued in 1991 has simply outlasted its shelf life. The facts on the ground don't reflect what really went on. So regardless of what this court does, the city, again, this can be years down the road, and there's a very low probability of chance that it would ever occur, but if the city came back in here years from now, this court would just simply be dealing with a totally different case than what happened in 1991. I take it that your argument is that if the city were to get the property in the future, a new lawsuit would have to be filed, and that the prior lawsuit might have argued significance, but that would just depend on traditional doctrines of law. I guess it would not be res judicata, right? You're absolutely correct. It would not be res judicata. And it wouldn't be collateral estoppel either, I suppose, correct? You're absolutely correct. So it would be starting over, and I suppose Mr. Paulson could submit affidavits with copies of everything that happened up to the point it became moot, and a new court could take that into account, but the theory of it would be it was a new lawsuit. It could be a motion for preliminary injunction followed by a motion to expedite, or it would be a new case. It would be a new case. It would be a new case that would be dated 2010 or whatever the year potentially would be. Again, I'm sure that the plaintiff would come back in and argue that the prior case law is relevant. And I don't think there would be anything to prohibit a court from reading the prior decisions and giving them the due deference that a vacated decision is entitled to. So those are certainly still there on the books. They're still going to show up, but it will be a new case. Well, I understand the government's position we can't stay this pending that eventuality. I guess I would be interested in hearing from the other parties, and maybe the government could reserve some time from my perspective. Absolutely, Your Honor. Well, you know, Mr. Paulson really didn't leave a carcass. I mean, he had a pretty good live case, but probably one of the first times in the history of our country, his good live case was the victim of a preemptive attack, you know. You could look at it that way too, could you? Well, Congress spoke very loudly. Do you know of any other cases like this? I'm certainly aware of other cases where there has been some question as to whether legislative action should be taken, and it was still taken. But remember, this was passed by unanimous consent in the Senate. It was passed 300 and some odd votes in the House. There wasn't a lot of disagreement about what really should happen here. But the key point to your question was had, and that's past tense. They don't have a lot of good lawyers in those two houses anymore. Your Honor, if there's no further questions, I would. You're not going to answer that one? Gee, why? Yeah, well, you know, I don't care what you do. I just, if you want to leave it here, fine. I'll try to stay alive until it comes back. If not, I'll think about it in the hereafter. Well, Judge Preggerson, I wish you great health and a long life. And with that, I'd reserve any balance of my time. Thank you. I appreciate that. I'd like to order a copy. Maybe you can come back with the word. All right. Anybody else want to talk about mootness? Good afternoon. Jim McElroy for Mr. Paulson. I understand you just want me to address mootness at this point. I would say that what has been suggested here would result in the grossest miscarriage of justice conceivable. Mr. Paulson has fought this battle for 17 years against great odds. He would like to live long enough to see some resolution. And what the government is suggesting — How old is he? He is 57 years old, and he has been diagnosed with terminal cancer. He's been given about a year to live, unfortunately. What the government has suggested will, I'm afraid, result in another 17 years of litigation, and I suspect that's exactly what the government wants because that's been their actions for the past 17 years, is to delay and to do whatever they can, including this latest act, which was unequivocally and undeniably done to save the cross. That was the whole reason this action was taken. And one of the judges asked if there was any action on the part of the city in this behalf, and there was indeed action on part of the city. The mayor flew to Washington, D.C. The mayor held press conferences. The mayor said, we are going to try to get the government to take the land from us because when we tried to give the land to government, that didn't work. We're going to do whatever it takes to save this cross on Mount Soledad. I don't think any of us think that the federal government assumed this property out of a wild coincidence. I'm not sure that really says anything to us today, though, because the problem is plain that this current lawsuit can't reach the United States. You can't propose to add the United States to a party because the theory of the lawsuit doesn't reach the United States. So, okay, here we are. We've got property. We've got a lawsuit that's based on a California constitutional theory that doesn't reach the United States, and it turns out the United States today, at least, is the legal owner of the property. What can we do? Well, I don't think it goes to the United States. I think it goes to the city of San Diego, and it's an injunction ordering them to act in a certain way, and that injunction is currently stayed. It's appropriately stayed, I think. Justice Kennedy said, let's wait and see how these two appeals turn out. That's another reason we need some resolution is we're waiting for how these appeals to turn out, and that's why we have the stay. What we know is what has already happened in the past is the city has tried to sell this land. They've taken money, and they've given a deed, and the court in the past has found those sales to be void ab initio, and it's reasonably likely that it's going to do the same thing again. There has never been a taking like this before in this situation. This was a legislative taking with no hearings whatsoever, and they took it for one purpose and one purpose only, and they stood on the Senate floor and said that. We're taking it to save this cross. So it's reasonably likely that this sale is going to be void ab initio, and even if it isn't, as the Supreme Court cases are among we cited to you says, if there is a possibility of the reoccurrence of the offense, the case isn't moot. Is there a possibility? Certainly, because the court has two choices. The district court has two choices in the lawsuit that's pending before it right now. It can find the sale void ab initio, or it can order the Federal Government to remove the cross. Well, I can also say the whole thing is constitutional, obviously, but that's not very likely. If it orders the Federal Government to remove the cross, the Federal Government can then do exactly what they did in this case. Oh, we're going to reconvey it to the city of San Diego and not remove the cross, and then say there's no jurisdiction, and then dismiss the new case, and then we're back for another 17 years. Well, not necessarily, because you can't add the Federal Government to this lawsuit because the theory of the lawsuit doesn't reach the Federal Government. The converse isn't true. If you start up against, and that's usually, I mean, real property laterals aren't unheard of where suddenly parties decide to try to dodge the court by transferring, and they always come to an unsuccessful end because the court gathers everybody up. This one's unique because you can't gather the United States up, given that it's not subject to California Constitution. But once you're on the other side, any lawsuit against the United States can pick up anybody else along the way and can even add the California theory against the other parties. So I understand the quandary we're in now. I'm not sure it happens the other direction. It happens again at the next step. Well, it may or may not, but it doesn't prevent the city from going through the same machinations as we're seeing here today. I think it's safe to assume that neither of these parties is going to go away quietly. As we're seeing here today, they now want to argue theories that somehow the cross has changed, even though they've argued it to this circuit before, and so we've got a whole new case every time we hang a new plaque up there. But we're not trying to bring the United States into this case. Judge Thompson has issued an order against the city of San Diego. There has been some change. It may not be a permanent change. In fact, it's very likely to be a temporary change. So Justice Kennedy has done the appropriate thing and said, all right, we're going to stay that until we find out how this pans out. And if, in fact, it's void ab initio, that means it never happened. The transfer never happened. And are we going to throw 17 years of jurisprudence down the drain because two governments got together and acted to unconstitutionally save a religious symbol because it's a politically popular thing to do today? It may not be next year, but it is today. And they managed to accomplish it because they have way much more power than Mr. Paulson does. But Mr. Paulson has the courts. That's all he has is the courts to protect him from this kind of conduct. And without the courts, he's looking at another 17 years of litigation, and, you know, that's pretty much all there is to it because whatever happens down below, if this is dismissed, if the city does not have this hanging over its head after 17 years, if the city owns the cross again, if that's what's decided at the district court, which I think it very likely will be, then the city is open to do whatever the heck it wants to do again until we go back and fight it all over again. It may decide to have another sale to a private party. And whatever we decide, it will appeal. But now we're almost through that. It's sort of like the what I mentioned in the brief of Sisyphus. He's pushed this rock up the hill for 17 years, and he's almost there. He's at the peak of the hill. And now the government wants to kick the rock back down to the bottom of the hill. It doesn't want to just void what happened, you know, in May. It wants to void what happened in 1991. It wants to void the two Ninth Circuit court decisions. Well, the Federal Government hasn't argued this is a practical or efficient result. It's argued it is a compelled result. You say you have the courts, but we have Article III, and that's all we got. So I'll do what authority is there for us to do something that retains the case? Because we're not acting against the United States Government. We have an injunction against the City of San Diego. And the district court has decided after 17 years of flim-flamming, if I may put it so strongly, after 17 years of trying to avoid this order, after the city entered into a settlement agreement, Mr. Paulson, and then reneged because this new idea came up of, hey, let's give it to the Federal Government. And if that doesn't work, let's have the Federal Government take it. Seventeen years was finally enough after this court in 2002 issued an en banc decision that said any efforts on the part of the government to preserve this cross are unconstitutional. Judge Thompson gave them another four years to get a remedy together. And when they didn't, he finally said that's enough. This is an order that is effective against the City of San Diego that has been stayed. It's not against the Federal Government. It's against the City of San Diego. It has appropriately been stayed. If it turns out that the Federal Government does own this land and their acts were constitutional, then that's just fine. The order will have no effect. And I'm sure the city can go in and ask to have it dismissed. Certainly, I'm not going to try to enforce an order that has no effect. But this is not an order against the United States Government. And the Araman case, the United States Supreme Court case, says unless it's absolutely certain that this is never going to happen again and everything is resolved, the case is not moot. If there's a possibility that this offense is going to reoccur, then the case is not  moot. It's not only a possibility. I think it's a real probability based on the fact, based on all the law we have. There have been 12 cases decided involving Latin crosses on government property. It's not a coincidence that they've all been decided exactly the same way. This is the most powerful and preeminent symbol of the dominant religion in our country. And as this Court and every other Court has always said, it unmistakably conveys a dominant religion over all others. So Mr. Polson has fought long and hard to get it where it is after 17 years, to finally have an injunction with some teeth in it against the city, not the Federal Government. So I don't think we have an Article III issue. That matter's been stayed. It's been appealed to you, I think again for delay. I don't think there's much merit to the appeal. Clearly, he did not abuse his discretion in making that injunction after 15 years of delay, when he gave them 90 days to do it. So it would be appropriate for this Court not to moot it, but to affirm the decision. The stay is in place. There is no action going to be taken against the Federal Government. And a lower court is going to decide whether the Federal Government's acts were unconstitutional or not. If you moot this case, you may be taking a very drastic action based on unconstitutional acts of the government. And that makes no sense, that we're going to moot 17 years. What if the case were dismissed without prejudice? That would cause several problems I can foresee of now, which are the government's doing more of the same and us not advancing the ball in any respect. Well, if it's dismissed without prejudice, you can come back in at a later date. And what do I come back in with? Do I have an injunction that gives the city 90 days to move the cross? I don't. And whatever I'm back with, it's going to be some new scheme on part of the city or the Federal Government that's going to get appealed, and I'm going to be, you know, three or four years away at least from any remedy. What is it you want us to do? I want you to say that this is not moot because this is not an action by the Court against the Federal Government. It is stayed. It's appropriately stayed. It's not the stay is not going to be relieved until the matter is decided in the lower court. It seems so clearly and obviously that the government's action is unconstitutional that it would be a gross miscarriage of justice to moot this case. Affirm Justice Thompson's order, and we will get a resolution from the district court. And once we have that resolution, then justice will be done. And if the Federal Government is right, of course this injunction cannot be issued or cannot be made effective against the city, but I'm fairly confident that that transfer is going to be voided ab initio and it's as if it never happened. And we don't have to start this litigation all over again. Counsel, I want to clarify something. It's Judge Gould speaking. So do I understand correctly, you would like us to not only stay the action as opposed to dismissing it, but you'd like us first to affirm the injunction? The city has appealed the injunction, and that's why we're here today. I understand that, but you want us to continue to resolve the appeal and then stay the case, as opposed to staying the case and leaving the appeal in abeyance. I just want to make sure I understand your position. Maybe I was a little confusing about the case has already stayed. I guess we could stay it further pending the resolution of the underlying case. I thought the injunction was stayed. The injunction is stayed. This case is stayed. I thought you were first arguing that we should stay all proceedings in our appeal, but then I heard you say that we should go ahead and decide the appeal. I'm sorry. I misspoke. The injunction is stayed, so the injunction is not going to have any effect. I think the appeal should definitely be decided, unless the city wants to dismiss it. But the city brought an appeal as to whether the judge abused his discretion. Clearly, I don't think he did. I think this Court should rule on that, and I don't think the case is moved. We only have jurisdiction to rule on the appeal if there's still a live controversy, right? Yes. You agree with that, but you say it's possible, indeed, in your view, likely, that the same issues will be presented again after resolution of the new claims. Yes, there is a very live controversy. This Court in the Clark decision indicated that there was a live controversy when someone who was going to – who represented to the Court that they were going to apply for an adult license in the future was challenging the statute, even though they didn't own a business. They said, well, that's good enough to make it a live controversy. We don't have that here. We have the controversy ongoing right now, and when the Court decides and all the appeals or whatever, it's – it may be automatic that the city owns the land and never didn't own it. If it's void ab initio, it never happened. And if the city owns the land, then that injunction should be sitting there on the day that's decided, because the city's had 17 years to resolve this problem, and they haven't done it. And Mr. Paulson should get some benefit of the work he's done and should be able to see some justice, hopefully, in this case, at some point. And the only way that's going to happen is if once the lower court or once the Court finally decides that the sale is void ab initio, that the injunction is in place. There's the other thing the government – The issue that I have in my mind – That's a matter of – It's a very interesting issue under Article III that you're presenting is you seem to have a live controversy only upon a condition subsequent. In other words, you have a live controversy if a certain decision is made in the future. Why is that a current live controversy in this case? Well, I think, as the Supreme Court said in Aramond, it's the burden of the person suggesting that it's moot to show that there's absolutely – I can't remember the exact language, but that it is almost certain that the matter is resolved forever and that it's not going to come back and become an issue, what they said in Aramond. And here you have at least a reasonable likelihood that this transfer is going to be overturned. The burden is on them to show this case is completely moot. There is no – no controversy is ever going to come up on this case, on this issue again. Okay. Well, the government argues that in 220 years, there's never been a legislative taking that's been invalidated under the Constitution. From what I can find, there have only been two or three legislative takings ever. The government does not normally take property by legislative fiat. They usually do it in the normal way, which involves hearings, et cetera. This was an extremely, extremely unusual taking, and I don't think it's ever occurred in this type of context. And as we know, we have already had a land transfer voided ab initio once in this case, and I expect that's a very reasonably – reasonable likelihood again. Or we could have the other thing happen, because it could go either way. The judge could say, I'm not going to go void ab initio, but what I'm going to do is order the federal government to remove the cross, at which point the federal government says, we're giving the city the land back and reconveying the land to the city. And then there's no injunction in place, and then the city decides to go through the same song and dance it's been going through for the last 15 years. And who knows where Judge Thompson will be or what judge will be in front of him or where I have to start all over again. If this Court moves back to 1991, then I don't even have the two Ninth Circuit decisions anymore. So it's not a condition. The judge – who's got the district court case? Judge Moskowitz has the new district court case. Judge Thompson issued the injunction. And Judge Moskowitz has the new district court case, where you're seeking to void all this ab initio. Correct. Correct. So what's the status there? We have a status conference coming up in the middle of November. We expect to have resolution, I would hope, 60 days after that. Resolution of the case? We would hope to have his decision. Obviously, the likelihood of appeal is – Gee, let me guess. He indicated to us that he would move very quickly on the case. Yeah, well, he's a good judge, you know. What if we just took the matter under submission and did nothing for a while? Well, the city has appealed the case, and it wants a decision on whether the judge abused his discretion or not. And I don't know that taking it under submission, what does that mean? If there are going to be appeals, it's going to be under submission for the next three years. I don't think that's a particularly judicially sound way to proceed. Let me signal to the attorney for the city with a question that's going to come, which is, what's the city's interest in pursuing the appeal? I mean, you've raised a question as to whether the city has an interest in pursuing the appeal. That's a question that should probably best be answered by the city, so we'll find out in a few moments. But it sounds like if the dust may settle in the district court as rapidly as two months from now, it's kind of unlikely you're going to get a decision in this case within two months anyway. So … Well, but then we're going to have appeals. Yeah, yeah. We'll use those appeals. And I just wanted to say one more thing about the condition precedent subsequent issue, and that is what we really have here is what we may have. What we may have is an injunction that was issued that the city needs to do something within 90 days. And in a bad-faith attempt to get around that lawful injunction, in a bad-faith attempt to get around that unlawful injunction, the city and the Federal Government conspired to do something to save the cross, which, as we all know, is unconstitutional. They've been fairly vocal and open about their intent. And so if we're going to wipe out 17 years of judicial decisions and all of the work Mr. Paulson has done, and maybe part of this mootness is an attempt to get rid of some attorney's fees issues as well, but if we're going to do that based on the bad-faith conduct of the parties on the other side, then I think that's just a terrible, terrible miscarriage of justice. And, again, I don't think Article III really applies when we're talking about ---- How does that wipe out 17 years of decisions and all that? Well, because what the government has just asked you to do ---- They're still on the books. You know, those decisions are still on the books. They may be on the books, but I have to read them. They're not going to be vacated. They're there. If you moot the 1991 injunction, which is what the government's asking you to do, I have to start all over again. And if I have to start all over again, as this Court knows, I am up against some awfully tenacious son of a guns. I'm sure they'd say the same. Yeah. Well, they have a lot more power than I do. They have a lot more money than I do. And they have a lot more bodies to keep throwing at this. Mr. Paulson's not the only one who may be leaving this planet at some time in the near future before this case is resolved. Counsel, if there's an attorney's fees issue, if there's an attorney's fees issue for plaintiff's attorney's fees, assuming we concluded it was moot, couldn't we send it back to the district court, instructing the district court to determine fees and then dismiss it as moot after that, or could we not do that? You could. The government's position has been that the case law indicates that once you moot it, it is effectively reversed, or I think the case law recommends that that's the way it be handled, and maybe this Court could handle it in a different way, recommends that it be reversed as a procedural matter. And if it's reversed as a procedural matter, then I lose the fees. And I think that may be part of the motivation here, at least. This is very complex, as everyone in the courtroom knows. So another question I have is if, in fact, we were to reach the merits of the appeal, as you've argued, if we concluded it wasn't moot or that that should be done, we would obviously have to set this for some, or at least I would think we would have to set that for some supplemental argument, wouldn't we? Because we haven't addressed that today. Address whether to affirm that Judge Thompson's? All we've talked about today is mootness. If we take this under submission and we come to the conclusion in accord with your position that it's not moot, what would we have to do then? Would we have to have this argument reset or what? I'm not sure you would. You could review the briefs and make that decision whether you think it would be helpful or not. I think the briefs are fairly clear. I hate to keep casting dispersions at my colleagues here who I like and enjoy very much and I appreciate their professionalism, but I think there's not much merit to the suggestion that Judge Thompson abused his discretion. For a judge to put some teeth in injunction that's 15 years old, I really don't think you need to hear much from me about it. I've said it in the brief. If you think it would be helpful, we'll be glad to come back up, I'm sure, and argue that. But I'm not sure you need to hear too much more about it. I don't think there's much merit to the appeal. Quite frankly, I think the appeal was taken for the purposes of delay, as almost everything has happened in this case for that reason, so that the government could organize this land swap deal. Justice Kennedy's order suggests that he thinks that four justices may grant cert or vote to grant cert if we'd simply affirm, which is what you're asking. So I think just the practical problem is that it's difficult for us to say, ah, there's nothing to this, given that we've got Justice Kennedy's order sitting out there suggesting that at least some people may think there's something to it. And so I can't address now how we'd actually procedurally go about doing it, but I think Judge Gould's suggestion is probably a good one, that today we're off track. We're not here really dealing with the injunction and what we thought the appeal was going to be about. Something has intervened. Well, that happens. And maybe if we get back on track in the future, that we start from square one of the appeal. I don't know. But I think it's hard for us to say that there can't be any merit to the appeal, given the current circumstances. Well, we will certainly come back and do that. I thought Justice Kennedy's primary concern was, the first thing he addressed was, there's two cases on appeal. It's reasonable to stay the execution of this injunction until those two appeals are decided.  I'm Robert Muse, and I represent the proposed intervener in this case, San Diegans, for the Mount Soledad National War Memorial. Now, can we possibly take up the intervention issue now? Well, I want to address the mootness issue, and that's why talking with counsel at the table, since you're addressing the mootness question, I wanted to make a couple points on that, since that's the issue that we're discussing now, and obviously the time I'm using now will be tying into my ten minutes that I have for the intervention issue. At this point, I think intervention is kind of, if the merits of the appeal are off the table, intervention into it surely has to be off the table. Certainly, and obviously we filed the motion to dismiss and vacate because it's moot, because obviously if this case is moot and it's dismissed, that's the best way to protect our client's interest, which is the reason why we wanted to intervene in the first place. But I want to make just a couple of points here before the city's counsel comes back up. Now, Judge Clifton, as you noted, Mr. Paulson doesn't have the power of the courts because we have the Constitution, and Article III of the Constitution requires there to be a live case of controversy throughout the course of proceedings for this Court to have jurisdiction to hear a case and decide a matter. And there's a couple of things I want to point out. There is no Sisyphus exception to the mootness requirement, and we cited in our reply brief I want to direct this Court's attention to this case, Friends of the Earth, Incorporated v. Laidlaw, Environmental Services, 528 U.S. 167. And the Court said quite specifically, quote, By the time mootness is an issue, the case has been brought and litigated, often as here, for years. To abandon the case at an advanced stage may prove more wasteful than frugal. This argument from sunk costs, referring to the judicial system, does not license courts to retain jurisdiction over cases in which one or both of the parties plainly lack a continuing interest. So it doesn't matter if this case has been going on for 7 years, 17 years, or 77 years. It is moot as of August 14, 2006, and under Article III, the case must be dismissed. Let's just take that language, lack of continuing interest. I mean, I suspect when I hear from the city attorney, I'm not going to hear him say, well, we don't care about this appeal anymore, so we're prepared to abandon it. Well, the question, Your Honor, is the continuing interest. You're supposed to intervene on that side, and you're not disinterested or no longer interested? When the case is, if the case is moot, if this Court, I think it would be improper for this Court to determine that it's not moot, which is why we want to be able to continue to press those arguments that being the case. But certainly when the city no longer has ownership of the property, as you go into San Diego now and you look at that Mount Soledad Veterans Memorial on top of that hill, that is a national memorial, a Federal memorial on Federal property. It doesn't belong to the city. You cannot enforce an injunction against the city based on State constitutional grounds to remove a memorial that belongs on Federal property. You just, it's impossible. You just can't do it. Should the city dismiss the appeal because they don't care anymore? The problem is the case has to be mooted and dismissed, Your Honor. No, no. That's right. You just established the standard for mootness. The party doesn't have an interest any longer. I'm suggesting, well, gee, the best way for the city of San Diego to demonstrate that is to dismiss the appeal, and we don't have a problem anymore. It's not before us. And that's that up. And you can deal with the district court to find out whether there's an injunction to enforce or not. But, I mean, the question that came to us was the appeal brought to the city of San Diego. And if you tell me it's moot because the city doesn't care anymore, the city confirms that by saying we don't care, we dismiss the appeal. That's not what the, Your Honor, the not care anymore is not the – What you just read to me – Right. There's no – what I just read to you means this. Can this court enforce a district court injunction against the city? Yes. Go back to the words you read to me. Right. It didn't say can the court enforce. It asked about what the interest of the party was. And does the city of San Diego have an interest any longer? Your Honor, the – Read that language again, would you? By the time mootness is an issue, the case has been brought and litigated often as here for years. Does the city of San Diego have a continuing interest in the case? If this Court is going to affirm that injunction, absolutely, yes. The point is – No. See, if they dismiss the case, we don't affirm anything. You can't. They dismiss the appeal. We don't affirm the case is dismissed.    They certainly have an interest in dismissing the case and vacating it. Well, are they not? See, a simple question. Sure. Does the city of San Diego have a continuing interest in this case? You can offer the explanation, but either the answer is yes or no. If the answer is yes, then what you just read to us doesn't apply. If the answer is no, then we'll wait to see the city's explanation for why it doesn't dismiss the appeal. Your Honor, if the answer is no, the question is what this Court was addressing is the fact that this Court has no Article III jurisdiction, and it must dismiss and vacate. Why don't you just answer the question? That was the answer to the question, Your Honor. I didn't hear the word either, yes or no. I'm not sure that was the answer to the question. I mean, I'm really not trying to play a game here, but I think there's a real question. You have just suggested to us a standard for mootness that I don't think you satisfy because it sure seems to me like the city of San Diego has a continuing interest because they're spending an awful lot of time and money sitting here saying that they care. I mean, they're not uninterested. They're not back in San Diego and they didn't call it in and say we don't care anymore, don't worry about this. And let me just say, because this blends into a point that Judge Gould brought about the attorney's fees, because in Lewis v. Continental Bank, which we also cited, made a point that attorney's fees also does not provide a basis for this Court to retain jurisdiction over the case. And so if this Court is not going to dismiss and vacate and then leave the city liable for potentially for attorney's fees, I mean, certainly the city has an interest in the case to the point where this injunction is removed because the case is moot and this Court has an obligation to do so under Article III. And that's plain. There is even assuming.  So the city does have an interest. The answer is yes. The interest is ensuring that the case is vacated, that it's dismissed and vacated. That's their interest, obviously. And if you look at the exceptions to mootness, voluntary cessation of illegal conduct, capable repetition but escaping review, and there's a third exception that often comes up, collateral legal consequences. That also applies, capable of repetition but escaping review. It does not apply, Your Honor, because that exception to mootness applies when the is not capable of filing a new lawsuit. The typical example where that comes up is in the abortion context. A pregnancy only lasts nine months. And so the nine months of litigation may not be fulfilled. So there's so that's where the exception comes up. It comes up in many other contexts, too. But that's the point of that exception. It's not that for some speculative basis somewhere down the line this property may eventually revert back to the city, and so this case is still a live controversy. It's not. There is simply no mootness exception that would give this Court the power to continue to hear this case. And it would be improper for it to stay and then hold on because the case has been brought to this Court's attention. The case is moot. There's no Article III jurisdiction to hear it. What about the argument that the city is an accomplice to the Federal Government in avoiding a Federal court order by lobbying the Congress of the United States to acquire property? I mean, Your Honor, I think that's completely meritless, but nonetheless it doesn't provide an exception to mootness. That's what happened. That's what happened. Right. That's what happened? Would you have had? Is that what happened or not? Is that what happened? Yeah. So you're saying that the city? Who? Who are you talking about the city? That maybe some people suggested to the Federal Government? Are you saying that everyone, the, you know, 300-some-odd members of the House and 100 senators are co-conspirators in some illegal? What that shows is that You said that. I didn't say it. No, you just alleged that the city and the entire United States Congress are apparently some co-conspirators. I didn't say that. I said the city and the Federal Government. Okay. Well, then I guess that includes The administrative branch. But this was passed by Congress, Your Honor. I know that. Okay. I know that. I know that. But you just admitted that there's still a continuing controversy. You just read us that language. The city of San Diego still has an interest. It's what the language you read us was. Your Honor, unless you can find I don't have an interest. Why don't they get up and say, we don't care about this case. We move to dismiss our appeal. That's the end of it. You've got a real buildup for the city. It's going to be a tough act to follow. Your Honor, could I don't know. You know, it's just There's no mootness exception that can apply in this particular case. I mean, I don't know how furthermore I can spell it out to this Court. And I understand we've gone past the point of constructive discussion. Yes. Because what I think the question we're posing is I agree. You identify the standard for mootness, and we say, well, on the face of it, it seems like the city thinks it has an interest. So we're not talking about an exception. We're talking about whether mootness applies in the first place. But I understand what you're saying. I just Your Honor, I mean, you're referring to that standard. I mean, it's really, I think, a really a gross interpretation of what that means. I mean, you've got I mean, here's what the city Is there Is a case, can this Court affirm an injunction to tell the city No, no, no. We're not talking about affirming. I never said anything about affirming an injunction. I asked, did the city And maybe it is time for the city attorney to answer this question. Does the city have a continuing interest? If there I mean, one thing would be the fee liability. If there's a fee liability hanging over their head When I talk, you be quiet. Yes, sir. All right. Let's hear from the city attorney now. I mean, you've gone way over your time. Thank you. We've given you plenty of time to talk. So you've raised this issue that's of interest to us. And with that buildup I say, with that buildup Would you like a glass of cold water? No, I'm fine, Your Honor. I think as I put forth in my papers, as I stand here today, The city hasn't authorized me to say that we would like our appeal dismissed. Good point. So that's the same as when I wrote that a few weeks ago as I stand here today. I don't have the authorization to say to this Court, the city has no further interest. What I can say, though, again, goes back to the Article 13 jurisdiction of this Court. And it Article what jurisdiction? Article 3. I'm sorry. I thought you said 13. I did. I misspoke. That's a secret codicil. Well, you know, I mean, you got my attention. I had a long time to sit over there and think and make things up. I think I was born on October the 13th. I was November the 13th. Oh, yeah. How about you, Judge Gould? October 17th. We're all too young. Happy birthday. It could be a multiple, you know. I apologize to the Court for this speech. But in a sense, the city's interest lies when you bleed back into the merits of the injunction. This Court, in 2002, in the en banc panel decision, stated that there were multiple ways in which the city could cure the constitutional infirmity previously identified in Ellis. And what the district court does now in 2006 is basically say there's only really one way to cure that, and that's to take the cross down. In light of the intervening circumstances, again, has made the offer initially in 2004 to accept the property upon a donation from the city. The city put forth a direct initiative to the voters of the city of San Diego. Those voters had approved it, and obviously that has been challenged in state courts of where we presently argue just on Tuesday of this week, the validity under state law of that proposition. So the California courts will address at least that aspect of it. Since then, of course, the federal government has now come and passed subsequent legislation and taken the property from the city. I really wish not to get into the merits of some of the allegations regarding collusion between the city and the federal government in that taking. I think that's best saved for another day before Judge Moskowitz. No, no, no, but I heard this before about how the city, people from the city, went over to Congress and lobbied to get it done and all that. I mean, that's not collusion, but, you know, they just weren't sitting back disinterested. In front of Judge Moskowitz will show that the mayor of the city of San Diego made one visit to Washington, D.C., and spoke to somebody within the White House. Other than that, I don't think that the evidence that will be produced before Judge Moskowitz will show anything else. And as one of my colleagues mentioned, again, you had the entire House of Representatives, the Senate, as well as the President, sign this legislation into law. So being that as it's said, the interest that the city, again, has is if it ever. . . Let me ask those questions because you guys get up here and you get us all excited, you know. So what are you expecting? Again, so procedurally I don't have the authority to move to dismiss. Does the city, can I honestly say, and that was part of the predicament that I felt coming into this appearance, is how could I simply avoid, as Judge Clifton, you mentioned, the 800-pound gorilla. It occurred. It occurred in August. The federal government has taken the property. If there's an affirmance of the injunction, how can any court then enforce that injunction against the city when it no longer possesses the property, when the city couldn't simply go back onto federal property and remove the cross at this point in time? Let me switch gears. It seems like they could not, but that the city's position, at least as I understand it, is you would like us to dismiss the case as moot or instruct the district court to dismiss it as moot. But if we don't think it's moot, then you want us to consider your appeal of the injunction. That's correct, Your Honor. Am I right? Yes, Your Honor. Okay. Well, that's it. I understand that type of position. You mentioned the argument on Tuesday, which reminds me, that's why this case was rescheduled to today. And so that's on track, presumably, for a decision. It was a court of appeal, the argument in front of it, for a decision. And, of course, that's subject to further petition for review however it comes out. Could that case entirely dispose of the matter? Or would the case before Judge Moskowitz, I haven't seen that complaint, what the theories are, but do you have an understanding as to whether we may actually be on a track where there's a resolution in a relatively near term on both of these cases proceeding? We heard about Judge Moskowitz having a desired resolve quickly. The Court of Appeals has got a clock ticking. What kind of time frame do you anticipate? From my perspective, again, I think the Court is right that, obviously, whatever the California Court of Appeals does, that there will probably be efforts for further review before the California Supreme Court. Will, if in fact the city is then able to donate property, presumably that it owns, to the Federal Government, will that address it? I think not. I think because of the theories that are before Judge Moskowitz that have been advanced by Mr. Paulson, at least to date, is, again, that that entire effort was done for the express intent and purposes of avoiding Judge Thompson's injunction. So it's circular. We come right back to it. Well, I have no serious hope the problem will go away by itself. But if there's a possibility that it will, then I'm not unhappy about that. I certainly understand. But I couldn't honestly stand before the Court and say with optimism that a resolution is right around the corner. Thank you. Can I respond briefly? Sure. I appreciate the additional time. First, let me say, I think it's in this record, as well as the Moskowitz record, that the mayor, in fact, not only went to the White House, but he issued press releases telling the public, I'm going there to try to save the cross, to get the Federal Government to take our land. Exercising his First Amendment rights. I'm sure it is. But when we're looking at the conduct of the parties here and whether we're going to wipe out all this litigation, and I think the conduct of the parties is important. But can I also say this about the United States Supreme Court telling us the standard on mootness, that the court should only dismiss on grounds of mootness where it is absolutely clear that the litigant is no longer in need of the judicial protection that it has sought. And that's a significant, significant burden on the moving party. And it also said, in addition to it being absolutely clear that they wouldn't need the judicial protection, it must be equally clear that the wrongful behavior could not reasonably be expected to recur. And I think that's exactly what we should expect. You're reading from something. Pardon? What are you reading from? I'm reading from my notes, but it's the Supreme Court case I referred to, Adirond, which I've cited in my brief. Check which case it was. What's the page? I think it's that particular quote. I think it's at 222. I'll tell you what you can do. When you finish, we'll give you a little gum slip. You just write it out. I will do that. And I lastly wanted to refer to the Clark case, which said, you know, even if the case isn't moot, the court can continue to exercise jurisdiction over a moot case, even if the court decides it's moot, which I clearly think it isn't. The Ninth Circuit has said in the Coral Construction case that the court can continue to exercise jurisdiction in the interest of justice. And when you're talking about judicial economy and the interest of justice, clearly in this case I think the court, there are no grounds to call this case moot because the issues are not going to go away. And certainly even if it is moot, this court can continue with its jurisdiction. As to the stay issue, it occurred to me that perhaps what this court could do is find that the case is not moot at all. The city obviously has a continuing interest. I thought its brief said that it took no position one way or another on the mootness issue. It didn't brief the issue. It didn't ask this court to moot the issue. We have non-parties here asking this court to moot the issue, not the city of San Diego. Its brief says it takes no position. So I would ask this court not to moot the issue, either decide on the merits or call us back for a decision on the merits. And if this court needs to issue a stay at that time, the city can certainly ask this court to reinforce Judge Kennedy's stay or whatever, to stay the injunction until we get a decision from the lower court. Because right now, quite frankly, we don't know who owns the land. The Federal Government can say it does, but Mr. Paulson can say the city does, and it's up to the court to determine that. That is a matter in litigation right now. So I don't think the case is moot. Thank you very much. Well, yeah, what about we're dealing with ownership of land, right? Yes. Isn't that a local action that has to be taken up in the state court? No, because the challenge, of course, is that it was an unconstitutional taking for the purpose of establishing religion. Have you looked that issue up? Is it a local action? I'm not sure I understand the court's question. We're before Judge Moskowitz because we and another group, Jewish war veterans also, are challenging the taking by the Federal Government, not because of all the immuno-domain issues, which could also come into play, but because of the constitutional issue. The government clearly took it to save the cross. That's in the legislative record. I could be way off base, but as I remember from law school and later on, that if you had an action that challenges the ownership of land, that that's a local action, you have to bring it in the state court. I don't think so, and it's based on the constitutional challenge, the violation of the law. I'll look it up. I got a good grade in property. Well, I didn't get such a good grade, so I may be wrong about that. All right, I'll look it up. Most of the time I'm wrong anyway, so we'll see. Okay. Anything else here? No, other than those two cases I cited I'll put here, but I did file a brief on the movements issue. Okay. We have the intervention issue. I obviously used up my time here. Excuse me for the question on intervention. I used my time on movements. Well, that's all right. We can take that under submission. You've got it all written down. Does anybody think we can do anything about that right now? We're going to act in a bigger fashion. It would be alive if the case continues in some fashion. Obviously, we understand you're saying the case shouldn't continue. If it continues in some fashion, I don't think we could take any action anyway at this moment. Obviously, my point being if you're not going to dismiss us of an argument, then you certainly want to keep the motion in Tavine alive until the appropriate time that that decision has to be made if the merits of this case continues onward. Thank you, Your Honor. All right. We have to decide whether we need any help or not. Okay. And this court will recess until 930 tomorrow morning.
judges: Pregerson, Gould, Clifton